IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-00180-01-CR-W-HFS |
| | ) | |
| JONATHAN GOOD, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This matter is currently before the Court on Defendant Jonathan Good's Motion to Dismiss filed on July 27, 2022.[1] Doc. 29. After extensions of time were granted for both parties, the Government filed Suggestions in Opposition on August 30, 2022, and Defendant filed Reply Suggestions on October 11, 2022. Docs. 42, 47. For the reasons set forth below, it is recommended that Defendant's Motion to Dismiss be **DENIED.**

**I.     INTRODUCTION**

On July 21, 2021, the grand jury returned an indictment charging Defendant Good with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Doc. 1. Count One states as follows:

> On or about July 29, 2020, in the Western District of Missouri, the defendant, **JONATHAN GOOD**, knowing he had previously been convicted of crimes punishable by imprisonment for terms exceeding one year, knowingly possessed a firearm, to wit: a Taurus, 9mm handgun bearing Serial Number TL083403, and the firearm was transported in interstate commerce. All in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e)(1).

*Id.* (emphasis in original).

---

[1] Defendant previously sought and was granted leave to file his motion to dismiss out of time. *See* Docs. 27, 39. The original deadline for pretrial motions was November 19, 2021. Doc. 16.

On August 2, 2022, the grand jury returned a superseding indictment. Doc. 37. The superseding indictment charges the same offense as alleged in the original indictment but included additional allegations concerning Defendant's prior convictions as follows:

> On or about July 29, 2020, in the Western District of Missouri, the defendant, **JONATHAN GOOD**, knowing he had previously been convicted of crimes punishable by imprisonment for terms exceeding one year, knowingly possessed a firearm, to wit: a Taurus, 9mm handgun bearing Serial Number TL083403, and the firearm was transported in interstate commerce.
>
> Prior to committing this offense, the defendant had the following felony convictions for violent felonies committed on occasions different from one another including: (1) Domestic Assault Second Degree, committed on November 3, 2012, in Jackson County, Missouri, convicted on November 20, 2013, in the Circuit Court of Jackson County, Missouri; (2) Domestic Assault in the Second Degree, committed on April 23, 2014, in Jackson County, Missouri, convicted on June 4, 2015, in the Circuit Court of Jackson County, Missouri; (3) Domestic Assault in the Third Degree committed on January 25, 2019, in Jackson County, Missouri, convicted on July 25, 2019, in Jackson County, Missouri Circuit Court.
>
> All contrary to Title 18, United States Code, Sections 922(g)(1) and 924(e)(1).

*Id*. at 1-2 (emphasis in original). As the superseding indictment is the most recent charging document, the Court considers Defendant's motion as applying to the offense alleged therein.

## II. DISCUSSION

The felon in possession of a firearm statute states:

> (g) It shall be unlawful for any person –
>> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . .
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). According to Defendant, "[u]nder the new framework mandated" by the Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Court should dismiss the superseding indictment as possession of a firearm is presumptively protected under the Second Amendment. Doc. 29 at 1-2. The Government argues "nothing in

*Bruen* casts doubt on the constitutionality of § 922(g)(1)," and moreover, the Second Amendment "does not protect a right of a felon to possess a gun."  Doc. 42 at 1.

A.      **Second Amendment Decisions Prior to *Bruen***

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  Prior to 2008, the Supreme Court had not conducted an "in-depth examination" of the Second Amendment right to keep and bear arms.  *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008); *see also United States v. Seay*, 620 F.3d 919, 923 (8th Cir. 2010).

1.      ***District of Columbia v. Heller***

In 2008, the Supreme Court decided *Heller*, which reviewed the constitutionality of a District of Columbia ordinance banning handguns.[2]  *Heller* rejected the argument that the Second Amendment protects the right to possess and carry firearms only in connection with militia service.  *Heller*, 554 U.S. at 580-81, 586-87, 589.  Instead, the Court found the Second Amendment guarantees an individual the "right to keep and bear arms."  *Id*. at 595.

The Court in *Heller*, however, clarified the Second Amendment right to possess firearms belongs to "law-abiding citizens."  *Id*. at 635 (observing the Second Amendment guarantee as the "right of law-abiding, responsible citizens to use arms in defense of hearth and home."); *see also id*. at 625 (explaining the "Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes.").  *Heller* also recognized the Second Amendment right was "not unlimited, just as the First Amendment's right of free speech was not."  *Id.* at 595 (citation omitted); 626 ("Like most rights, the right secured by the Second Amendment

---

[2] The District of Columbia ordinances generally prohibited carrying a handgun and registering a handgun as a lawfully owned firearm.  *Heller*, 554 U.S. at 574-75.  The ordinances also required residents to keep other types of lawfully owned firearms (such as registered long guns) either unloaded and disassembled or bound by a trigger lock device in the home.  *Id*. at 575.  The Court ultimately found these ordinances violated the Second Amendment.  *Id*. at 628, 635.

3

is not unlimited."). Drawing further comparisons to free speech, the Court stated it did "not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for *any purpose*." *Id.* at 595 (emphasis in original). The Court identified certain gun laws that should not be called into doubt by its Second Amendment ruling:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 626-27. The Court identified these laws as "presumptively lawful." *Id.* at 627 n.26.

### 2. *McDonald v. City of Chicago, Illinois*

Approximately two years later, the Supreme Court reviewed the constitutionality of local ordinances banning firearms in Chicago and a surrounding suburb.[3] *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010). The municipalities contended the Second Amendment right to keep and bear arms did not apply to the States. *See id.* The Court's majority disagreed, concluding the Second Amendment right is fully applicable to the States through the Fourteenth Amendment. *Id.* In doing so, the Court, reemphasized its observations in *Heller* and affirmed its Second Amendment decisions should not be read to invalidate many of the longstanding laws regulating firearms:

---

[3] The ordinances at issue in *McDonald* effectively banned the registration and possession of handguns. 561 U.S. at 750.

4

> We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *We repeat those assurances here.* Despite municipal respondents' doomsday proclamations, incorporation does not imperil every law regulating firearms.

*Id.* at 786 (emphasis added).

### 3. Eighth Circuit Precedent after *Heller* and *McDonald*

After the Supreme Court's decisions in *Heller and McDonald*, criminal defendants raised both facial[4] and as-applied[5] challenges to the constitutionality of 18 U.S.C. § 922(g)(1) and similar gun statutes on Second Amendment grounds. The Eighth Circuit has consistently rejected facial challenges to section 922(g)(1). *See*, *e.g.*, *United States v. Woolsey*, 759 F.3d 905, 909 (8th Cir. 2014); *United States v. Joos,* 638 F.3d 581, 586 (8th Cir. 2011); *United States v. Irish*, 285 F. App'x. 326, 327 (8th Cir. 2008). The Eighth Circuit has also routinely denied as-applied challenges to section 922(g)(1). *United States v. Williams*, 24 F.4th 1209, 1211 (8th Cir. 2022) (rejecting argument that firearms located inside a home for self-defense renders section 922(g)(1) unconstitutional as-applied to defendant); *United States v. Adams*, 914 F.3d 602, 605 (8th Cir. 2019) (rejecting as-applied challenge where the defendant failed to address whether the Second Amendment protects a right to carry a weapon concealed in a vehicle); *Woolsey*, 759 F.3d at 909 (rejecting as-applied challenge to section 922(g)(1) as the defendant did not show he was "no more dangerous than a typical law-abiding citizen."); *United States v. Taylor*, 695 F. App'x. 988, 991-

---

[4] A facial challenge to the constitutionality of a statute requires the movant to establish that no set of circumstances exists under which the law would be valid. *United States v. Hall*, 44 F.4th 799, 805 (8th Cir. 2022) (quotations omitted); *see also United States v. Salerno*, 481 U.S. 739, 746 (1987) (recognizing a facial challenge is the most difficult challenge to mount successfully).

[5] In an as-applied challenge, the movant asks the reviewing court to declare the disputed statute unconstitutional on the facts of a particular case. *United States v. Adams*, 914 F.3d 602, 605 (8th Cir. 2019). "The as-applied challenger does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Id.* (internal quotations omitted).

5

92 (8th Cir. 2017) (rejecting as-applied challenge where the defendant failed to show he was a "non-violent felon"); *United States v. Hughley*, 691 F. App'x 278, 279-80 (8th Cir. 2017).

**B.     The *Bruen* Decision**

In *Bruen*, the Supreme Court reviewed the constitutionality of a New York gun licensing law requiring a showing of a "special need for self-defense" to obtain a permit to carry a gun in public. 142 S. Ct. at 2122. In the opening paragraph of the opinion, the Court stressed *Heller* and *McDonald* remained good law, and its holding in *Bruen* was consistent with both opinions. *See id*.

Reviewing a test developed by the lower courts to evaluate the constitutionality of gun regulations, *Bruen* rejected the second step, or "means-end" scrutiny, in the Second Amendment context.[6] *Id*. at 2127. Instead, the Court, observing *Heller*'s methodology "centered on constitutional text and history," held the government must affirmatively prove "its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127-29. Accordingly, courts must now assess "whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2131.

As it did in *Heller* and *McDonald*, the *Bruen* Court recognized there would be reasonable limits on the exercise of Second Amendment rights and repeated its prior observation that "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the

---

[6] Since *Heller* and *McDonald*, lower courts developed a two-step test to assess Second Amendment claims. *Bruen*, 142 S. Ct. at 2126. The first step allows the government to justify its regulation by establishing the challenged law regulates activity falling outside the scope of the constitutional right as originally understood. *Id*. If the regulated conduct falls beyond the Second Amendment's original scope, the regulated activity is unprotected, and the inquiry stops. *Id*. If the historical evidence is inconclusive or suggests the regulated activity is not categorically unprotected, lower courts generally proceeded to a second step, applying an intermediate scrutiny test to consider whether the regulation is "substantially related to the achievement of an important governmental interest." *Id*. (internal quotations marks and citation omitted).

6

right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id*. at 2128 (quoting *Heller*, 554 U.S. at 626). Further, the Court acknowledged not all modern-day laws would closely resemble historical predicates. *See id*. at 2132. If a modern-day law lacks specific historical predicates, a court may properly engage in "reasoning by analogy." *Id*. at 2132-33 (observing "even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."). As an example, the Court observed there are "no disputes" that laws prohibiting the carrying of firearms in sensitive places, such as schools and government buildings, are lawful despite the historical record yielding "relatively few 18th- and 19th-century 'sensitive places' where weapons were altogether prohibited . . . . " *See id.* at 2133. Unlike *Heller* and *McDonald*, *Bruen* did not specifically address or discuss felon in possession statutes.

The Court characterized its earlier Second Amendment decisions as "recogniz[ing] that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense."[7] *Id*. at 2122 (citing *Heller* and *McDonald*). Thus, language from *Heller*, *McDonald*, and *Bruen* continues to indicate Second Amendment rights belong to law-abiding, adult citizens.

C.     **Application of the *Bruen* Decision**

In the instant matter, Defendant describes *Bruen* as a "dramatic shift in Second Amendment law." Doc. 29 at 1. Although *Bruen* changes how gun regulations are reviewed under the Second Amendment, it cannot be read to call into doubt felon in possession statutes for several reasons. First, neither *Heller*, *McDonald*, nor *Bruen* involved a direct constitutional challenge to 18 U.S.C.

---

[7] Throughout the *Bruen* opinion, the Court described the Second Amendment right as belonging to law-abiding citizens and described the petitioners as such. *See id.* at 2124-25, 2131, 2133-34, 2150, 2156.

§ 922(g)(1) or a similar felon in possession statute. Each case involved challenges to gun permits and use regulations. Second, *Heller*, *McDonald*, and *Bruen* recognized Second Amendment rights are not unlimited, and historical limitations have been placed on the right to carry and bear arms.

Third, *Heller* clarified its ruling did not cast doubt on longstanding regulatory measures such as "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-27. Two years later, the Court "repeat[ed] [its] assurances" that felon disarmament statutes remain valid. *McDonald*, 561 U.S. at 786 (also recognizing its decision "does not imperil every law regulating firearms.").[8]

Fourth, *Bruen* expressly stated its holding was consistent with both *Heller* and *McDonald*. 142 S. Ct. at 2122. Further, in his concurring opinion, Justice Kavanaugh stated *Bruen* does not disturb what the Court said in *Heller* about the longstanding prohibitions on the possession of firearms by felons and the mentally ill. *Id*. at 2162 (Kavanaugh, J., concurring). Justice Alito also observed in his concurring opinion that "[o]ur holding decides nothing about who may lawfully possess a firearm . . . [n]or have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns." *Id*. at 2157 (Alito, J., concurring). Although dissenting from the majority opinion, Justice Breyer echoed the same

---

[8] Defendant's motion invites the Court to disregard the *Heller* passage as dicta. Doc. 29 at 15-17. Lower courts, however, should afford deference and respect to Supreme Court dicta. *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1064 (8th Cir. 2017); *see also Powell v. Kovac's, Inc.*, 596 F. Supp. 1520, 1524 (W.D. Mo. 1984) (recognizing "dicta in Supreme Court opinions will generally be deemed binding."). As such, the *Heller* dicta concerning the continued validity of felon in possession statutes must be considered. *See also Adams*, 914 F.3d at 611 (observing lower courts "must respect the language used by the Supreme Court in *Heller* . . . regardless of whether it is controlling.") (Kelly, J., concurring).

sentiments, noting *Bruen* "cast[s] no doubt on" *Heller's* treatment of laws prohibiting firearms possessions by felons. *Id.* at 2189 (Breyer, J., dissenting).

Simply put, nothing in *Bruen* reversed or changed the *Heller* and *McDonald* statements concerning the continued constitutionality of statutes that prohibit a felon from possessing firearms. *Bruen* cannot be fairly read to invalidate 18 U.S.C. § 922(g)(1) on Second Amendment grounds. Based on the clear statement of the Court in *Heller*, which was not disturbed by *Bruen*, felon in possession statutes do not violate the Second Amendment right to keep and bear arms.[9] Further, by consistently describing the Second Amendment right as belonging to law-abiding, adult citizens, the Court has signaled non-law-abiding citizens, such as felons,[10] are properly disqualified from carrying a firearm under the Second Amendment.

Defendant does not cite or attempt to distinguish any of the Eighth Circuit decisions addressing the constitutionality of section 922(g)(1) before *Bruen*. Since *Bruen* did not reverse or overturn *Heller* and *McDonald*, the Eighth Circuit cases that applied those opinions in reviewing the constitutionality of section 922(g)(1) remain good law. A lower court cannot overturn or reverse binding Eighth Circuit precedent. *See BPS Guard Servs., Inc. v. N.L.R.B.*, 942 F.2d 519, 524 (8th Cir. 1991); *see also M.M. ex rel. Special Sch. Dist. No. 1*, 512 F.3d 455, 459 (8th Cir. 2008) (describing as "fundamental error" a district court's declination to follow an Eighth Circuit

---

[9] Defendant invites this Court to engage in a historical analysis as to whether felon in possession statutes or regulations were "widespread and commonly accepted in the founding era, when the Second Amendment was adopted." Doc. 29 at 1, 5-6, 9-14. Based on the Supreme Court's statements concerning felon in possession statutes, this analysis is not required. Other courts, however, have found that prohibiting a felon from possessing a firearm is consistent with the nation's historical tradition of firearm regulation. *See, e.g.*, *Range v. Att'y Gen. U.S.*, No. 21-2835, 2022 WL 16955670 at *15 (3d Cir. Nov. 16, 2022); *United States v. Carrero*, Case No. 2:22-cr-00030, 2022 WL 9348792 at *2-3 (D. Utah, Oct. 14, 2022); *United States v. Coombes*, Case No. 22-CR-00189-GKF, 2022 WL 4367056 at *5-8 (N.D. Okla., Sept. 21, 2022); *see also United States v. Bena*, 664 F.3d 1180, 1183-86 (8th Cir. 2011) (observing "historical support for a common-law tradition that permits [gun] restrictions directed at citizens who are not law-abiding and responsible.").

[10] The motion to dismiss does not aver any particular facts regarding the nature of Defendant's prior felony convictions. *See* Doc. 29. The superseding indictment, however, alleges Defendant has two prior convictions for second degree domestic assault and one prior conviction for third degree domestic assault. Doc. 37 at 1.

9

decision, even where the district court viewed the opinion's treatment of a legal issue as "cursory"); *Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003) (explaining the district court was bound to apply Eighth Circuit precedence). This Court is required to apply binding Eighth Circuit precedence finding section 922(g)(1) constitutional.

In the wake of *Bruen*, constitutional challenges to section 922(g)(1) have failed in this Court. *See, e.g., United States v. Penn*, Case No. 20-00266-01-CR-W-BP (W.D. Mo., Aug. 30, 2022) (ECF Doc. 124); *United States v. Duncan*, Case No. 19-00315-04-CR-W-DGK (W.D. Mo., Aug. 22, 2022) (ECF Doc. 810); *United States v. Ford*, Case No. 21-00179-01-CR-W-HFS (W.D. Mo., Nov. 4, 2022) (ECF Doc. 47) (Report & Recommendation); *United States v. Jones*, Case No. 20-00354-01-CR-W-HFS (W.D. Mo., Oct. 19, 2022) (ECF Doc. 71) (Report & Recommendation). Numerous federal courts in other jurisdictions have also rejected constitutional challenges to section 922(g)(1) after *Bruen*. *See, e.g.*, *Range v. Att'y Gen. U.S.*, No. 21-2835, 2022 WL 16955670 at *15 (3d Cir. Nov. 16, 2022); *United States v. Baker*, Case No. 22:20-cr-00301-DBB, 2022 WL 16855423 at *4 (D. Utah, Nov. 10, 2022) (observing the court "is unaware of any court finding § 922(g)(1) unconstitutional post-*Bruen*" and summarizing other district court opinions in footnote 42); *United States v. Young*, Case No. 22-054, 2022 WL 16829260 at *8 n.2, n.3 (W.D. Penn., Nov. 7, 2022) (collecting cases).

The Government's opposition and Defendant's reply discuss at length whether Defendant's motion to dismiss raised a facial challenge to section 922(g)(1), an as-applied challenge, or both. *See* Docs. 42, 47. Defendant's initial motion did not include any particular facts or arguments as to why section 922(g)(1) is unconstitutional as applied to him, other than he is a convicted felon

10

who allegedly possessed a firearm.[11] It also does not aver any facts concerning the circumstances underlying the current offense charged (such as whether the firearm was possessed for self-defense), the nature of Defendant's alleged prior felony convictions (including whether they were violent or outdated), or whether Defendant was less dangerous than the typical felon. A fair reading of the initial motion suggests Defendant mounted a facial challenge to section 922(g)(1) after *Bruen*.[12] And as noted above, facial challenges to section 922(g)(1) have been squarely rejected by the Eighth Circuit.

To the extent Defendant also seeks to assert an as-applied challenge, such challenges have been consistently rejected by the Eighth Circuit. *See supra*, at II(A)(3). Further, the Eighth Circuit has recently stated that to properly raise an as-applied challenge to section 922(g)(1), the defendant must at a minimum establish "(1) that the Second Amendment protects his particular conduct, and (2) that his prior felony conviction is insufficient to justify the challenged regulation of Second Amendment rights." *Adams*, 914 F.3d at 605. Defendant's motion fails to meet or address the second prong of *Adams* and arguably may not meet the first prong. *See Williams*, 24 F.4th at 1211 (rejecting as-applied challenge where Defendant simply argued he possessed a gun for self-defense and failed to raise other arguments why the statute might be unconstitutional as applied to him); *see also United States v. Reese*, Case No. 19-cr-257, 2022 WL 16796771 at *2 (W.D. Penn., Nov.

---

[11] In his reply, Defendant submits that his constitutional claim "does not require any fact finding beyond those alleged in the superseding indictment." Doc. 47 at 7.

[12] As an example, Defendant averred that "[b]ecause possession of a firearm comes within the Second Amendment's 'plain text,' Mr. Good's conduct is presumptively protected. And the government will be unable to rebut that presumption. Felon disarmament laws, which did not appear . . . until the 20th Century, were unknown to the generation that ratified the Second Amendment." Doc. 29 at 1-2. He also argued section "922(g)(1) violates Mr. Good's Second Amendment right to keep and bear arms. The amendment's 'plain text' does not differentiate between convicted felons and other members of 'the people,' and a total prohibition on firearm possession by felons therefore presumptively violates the Second Amendment." *Id*. at 9. In his conclusion, Defendant argues that section 922(g)(1) violates the Second Amendment "as it was understood at the time of its adoption." *Id*. at 25. These arguments constitute facial challenges to section 922(g)(1).

8, 2022) (holding that where defendant did not set forth with any particularity the basis for his as-applied challenge separate from his facial challenge, the as-applied challenge must fail).

Based on the foregoing, it is recommended that the District Court find 18 U.S.C. § 922(g)(1) is constitutional and does not violate the Second Amendment. Further, it is recommended that Defendant's facial and as-applied challenges to section 922(g)(1) be denied.

### III. CONCLUSION

Therefore, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order DENYING Defendant's Motion to Dismiss.

The parties are reminded they have fourteen days in which to file any objections to this Report and Recommendation. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation except on the grounds of plain error or manifest injustice.

DATE: November 18, 2022            */s/ W. Brian Gaddy*
                                    W. BRIAN GADDY
                                    UNITED STATES MAGISTRATE JUDGE